The clerk will call the next case. Case number 3-14-0345, Archer Bank v. McLean v. Roberts, Scotia v. Thomas, Duke v. Jones of the Towns v. Joseph Gentleman. Mr. Gentleman, may I proceed? Before we get started, I've argued in a lot of different appellate courts, and this is one of the most beautiful, majestic ones that I've seen. I've never been here before. Here we like it. It's a great place to argue a case. Yes, it is. But we won't take it easy on you. Okay, that's okay. I'd like to reserve some time for my rebuttal. You have five minutes. Yeah, that sounds good. May it please the Court. My name is Joseph Gentleman, and I represent the appellates in this case, Thomas and Joan Booth. We're here before you because we believe the trial court committed reversible error in this case because it entered judgment against Thomas and Joan Booth on some guarantees that they entered. We believe the trial court didn't apply some long-standing Illinois law related to releases in this case. Really, the facts of this case are really not in dispute. We have a bank. The appellate is a bank who loaned money to two entities, Homer Developers and Orlin Oak. In consideration for those loans, the bank asked for guarantees. Thomas Booth and Joan Booth executed guarantees as well as Thomas Booth's brother, Barry Booth, and his wife. There's two separate guarantees, but essentially they're word-for-word identical except that they cover different loans. It's also undisputed that the agreement that was entered by the Booth family were guarantees. They were not surety ship agreements. I think everybody agrees on that, right? Correct. Nobody disagrees. I think so, and I think it plays a part in one of the arguments. These are guarantees, and after these guarantees were executed and the loan was funded, at some point in time there was a default. After the default was entered, the bank entered settlement agreements with Barry Booth and his wife. Barry Booth is an orthodontist who has a pretty successful practice, and ultimately he reached a settlement agreement with the bank. The settlement agreement provided that Barry Booth would provide $775,000 cash and a couple hundred thousand dollars worth of other real estate. In return, the bank executed a settlement agreement that contained a covenant not to sue clause, in addition to another clause that turned a covenant not to sue into a general unconditional release once the bank was able to obtain a foreclosure judgment related to the collateral properties. So, it's pretty much undisputed again in this case that the bank has filed a foreclosure case and obtained a foreclosure judgment against the collateral properties. Thus, the effect of obtaining the judgment is that the general unconditional release is in effect. Now, after the bank entered the settlement agreement with Barry Booth, Thomas Booth wasn't privy to any of that. Thomas Booth tried to get a copy of the settlement agreement. Ultimately, he wasn't able to get one before a foreclosure case was filed. In the foreclosure case, the bank sought to foreclose on the collateral properties and add accounts to enforce the guarantees. Thomas and Joan were negotiating with the bank as well, correct? No, not really. I mean, he was pretty much at part, a little bit at the beginning, but then he was excluded because he had other issues that he wanted to raise and Barry Booth didn't want to get into litigation with the bank. So, ultimately, it was a settlement agreement that Thomas Booth didn't know what any of the terms were, wasn't there at the negotiating when it was finally resolved, and didn't know what kind of consideration Barry Booth had given the bank and didn't know what kind of consideration the bank gave to Barry Booth, which is the main issue in this case. So, how exactly does this release your clients? Well, there's at least two arguments. I mean, we have the long-standing principle established by the Illinois Supreme Court in Parnelly in 1869, the release one, release all concept. This has been the law in Illinois for almost 150 years. You can't settle individually with people? Initially, no, but as the case law has developed over the 150 years, you can settle with one co-obligor, but you must put in the settlement agreement that you're reserving your rights against any other co-obligors. So, in this case, the settlement agreement that was reached did not contain a reservation of rights by the bank. The bank argues, yes it does, but can't really point to any language in the settlement agreement itself that says we were specifically reserving our right to pursue Thomas Booth. And the easiest way to really understand that the bank did not specifically reserve the claim against Thomas Booth is to look at paragraph 22 of the settlement agreement, in which Barry Booth and his lawyers put in a specific clause reserving rights against Thomas Booth in case there was any litigation that would occur after the execution of the settlement agreement. If you look at paragraph 22, the caption of it is, Booth's reservation of rights against other guarantors. And then there's five lines where Barry Booth is specifically reserving any claims that he has against Thomas Booth because Barry Booth's lawyers understood that Parmalee was in existence, that the Illinois law was release one, release all. The bank did not specifically include a reservation of rights. The bank says, well, we included, if you look at the language of the guarantee, and the language of the guarantee specifically reserves our rights in this type of situation in which the bank settles with one co-obligor that Thomas Booth agreed that he would not be released. There's two problems with that argument. First of all, we've got the Eden State Bank versus Demos case, which is eerily similar to this situation. In fact, it's kind of ironic that it's actually the same bank that's involved in this case. Eden's Bank is part of that same banking conglomerate, so it's the same exact partner. In the Demos case, really the only major difference is that the Demos case involved two Greek brothers, and here we have two Irish brothers. In Demos, the bank loaned money to an entity that the Greek brothers controlled, and the Greek brothers guaranteed that obligation. Same thing here, bank loaned money to two entities, the Irish brothers guaranteed it. In Demos, the bank entered an agreement with one of the Greek brothers in which one of the Greek brothers provided substantial consideration for a release. In Demos, it was a general, unconditional release. Same thing happened here. The Irish brother entered a settlement agreement with Archer Bank and provided over a million dollars worth of assets. In exchange for that, like I said, the bank provided a general, unconditional release to Barry Booth. In Demos, the bank tried to enforce the obligations of the guarantee against a non-settling Greek brother. Same thing happened here, against a non-settling Irish brother. In the Demos case, the bank argued the same exact arguments essentially here, that the language of the guarantee prohibited the release one, release all concept from applying, and the Demos court rejected that argument. Now, there was a dissent in the Demos case, but the dissent reasoning is wrong for the second reason that the bank's arguments are wrong here, is that you have a guarantee that was entered in 2008, 2010. In 2012, there was another agreement entered by the bank with the effect of Barry Booth. So the 2012 agreement is the most recent agreement that's entered between some of the parties. We all understand the well-established principle that when you enter a contract, that whatever the Illinois law is at the time is considered as part of that contract. It doesn't have to be written into the contract, but it's considered deemed part of the contract. And we all agree that at the time the contract was entered, we had this parmally Supreme Court decision that says release one, release all. Well, didn't parmally also say that we'll construe a release to carry out the intentions of the parties, and consider the language of the contract led in light of the circumstances surrounding the transaction in order to determine the intentions of the parties? Yeah, but you have to stay within the four corners of the agreement. And if the parties, in this case, Archer Bank, did not specifically reserve any claims against Thomas Booth, and the law writes into the contract that release one, release all, so the only way the bank can opt out of that in a sense, opt out of parmally and the release one, release all concept, is to put something in the agreement saying Illinois law says it's release one, release all. In this instance, we are reserving our rights against Thomas Booth. So it's making it clear what their intent is. Because with applying Illinois law to the contract, it appears that the intent is release one, release all, because they got a substantial amount of money from Barry Booth, and Barry Booth could have been involved in litigation. The bank did not want to litigate against Barry Booth and Thomas Booth, probably most likely against Barry, because Barry is a very wealthy individual who could easily afford to litigate the case. So the intent is clear here that Archer Bank did not opt out of the release one, release all concept, because it didn't include any language in the release. On the issue of intent, can, instead of focusing on paragraph 22, can we focus on paragraph F? And it's just for purposes of making a record later, when we listen to the recordings, it's page 57 of the appendix, or 9 of 15 of the settlement agreement. The release, as I understand it, is described in paragraph F. I'm not sure it's an unconditional release. Aren't there two conditions? The execution of settlement or settlement agreements between the bank and the other guarantors. Other guarantors seems to me to refer to somebody other than the Booths. Correct. So did that happen? Well, yes. If you read on, it says whether by agreement, foreclosure, or otherwise. So in F2, it says the release. Let's focus on the language of one, between the bank and other guarantors, which fully settles all disputes between all of such parties. Did that condition happen? No, there was no settlement agreement. So then we go to paragraph 2. It's an or, correct. Okay, so why do you think 2 applies, which is the sale, transfer, or other disposition of collateral properties? Because the bank disposed of the collateral properties by obtaining a foreclosure judgment. That's why it says foreclosure or otherwise. You've got to think about what did Barry Booth want? Barry Booth wanted to close the back door. Barry Booth had a release or a covenant not to sue from the bank, so the bank can't sue him. But then Barry goes, you know what, I need to cover the back door, so once you receive the collateral properties back, I want to make sure that nobody can come after me, pursuant to a deficiency judgment or any other back door ways against him. So he wanted a full release to deal with it only after the bank got its property back. Isn't that what every release party wants when you pay money, is I want to be done? I mean, isn't that what happens to everybody that signs a release? Well, that's an interesting point because I've been practicing almost 20 years, and what usually happens in these cases is banks never give releases because of the problems that we're talking about here. They give covenants not to sue, and that's why the original clause says we have a covenant not to sue, so we're not going to sue you for this agreement. And that's what a lot of the case law is talking about. Well, general releases, whether they're release one, release all, usually the court finds that the release doesn't cover a collateral. It finds that, well, because it's not a release really, it's a covenant not to sue. And here we don't have that problem because everyone agrees it was a release and a general unconditional release other than the condition that you raised, but that has been satisfied because if you look earlier... Well, then we turn up to paragraph, go back up to paragraph F, and there is language in there that says other guarantors, which does not seem to reference the booths as defined in the initial paragraph of the settlement agreement. If you had that other guarantors not been in there, you wouldn't have an argument. I know you make an argument that the booths means all the booths, and sorry, I think that's silly because the opening paragraph of the settlement agreement defines which booths are the booths. They keep using each and both. I'm not going to be focusing on that here, but the language where you're pointing to in paragraph F when you're talking about other guarantors, that's a separate issue. The second reason why the trial court error here is because you have the release one, release all principle, but then you also have the fact that this release language also releases the underlying principle obligation, and that's what you're referring to the guarantors as discussing because what Gary Booth wanted, like I said, to close the back door was after they got a foreclosure judgment and the bank received their properties back, he wanted everything released, so what the bank did is the bank said, well, we'll give you a release of the guarantee, but we'll give you something more than that. We'll give you a release of the claims that the bank has against the principle obligors, Homer developers, and Orland Oak. Counsel has two minutes. Okay, thank you, ma'am. So that's what that language is talking about, and the bank says, no, we didn't give Gary Booth a release of the obligations that Homer developer and Orland Oak owed us. We gave you a release of the obligations that they, that Homer developers, that you owed Homer developers and Orland Oak, but the bank couldn't give that. The bank didn't owe Homer developers Orland Oak. The bank couldn't give a release on behalf of Homer developers or Orland Oak to Gary Booth. They could only give a release of the note that Homer developers signed and the note that Orland Oak signed, and that's the way to close the back door, because if there is no deficiency judgment, then Gary Booth doesn't have to worry about Homer developers or Orland Oak coming after him, because once there's a foreclosure judgment, it's over with. Those companies don't owe any money to anyone, therefore they can't go after Gary Booth for contribution or indemnity. So, at the end of the day, what's all of that got to do with whether this release releases your client? Because if you release the principal obligation, if Homer developers and Orland Oak doesn't owe any money after the foreclosure judgment, that releases the guarantees by operation of law, because a guarantee, a guarantor only guarantees the obligation of the principal. And what the bank is trying to do is turn it into, that's why I spent a lot of time in the beginning of the brief talking about the guarantee versus a surety, is because it's changing the obligation. The bank's trying to say, you weren't a guarantor, you were primarily liable as a surety. And that's just not true. They can't change the terms of the obligation by saying that, in this case, that Thomas Booth and Joan Booth agreed to be primarily liable on the obligation. So if the underlying obligation is released, the guarantees are released. And that's what exactly happened here. It's the same thing, again, that was argued in Demos, was the same exact argument. The Demos court said, no, the principal obligation was released, thus the guarantees are released. And there's, you know, I've cited other case law that establishes that if you release the principal obligation, the guarantees are released. And that's exactly what happened here. The release one, release all, and they released the principal obligation. Because that's the only thing that Archer Bank could give Barry Booth to protect him from any kind of assault by the corporate entities that loaned the money. Thank you, Your Honor. Any other questions before we finish? Mr. Gentleman, thank you. And I don't want to mispronounce your name. Dawida? DeWittia. DeWittia. Mr. DeWittia, you may proceed. May it please the court. My name is Robert DeWittia, and I represent Archer Bank. Archer Bank is the appellee in this proceeding. What happened here is just a very straightforward commercial foreclosure. The method used by the bank to release two of its guarantors is unremarkable. The settlement agreement is unremarkable. Archer Bank requests that the judgment entered by the circuit court be affirmed. If I may point your direction back to what the justice was looking at, which is 6F. In fact, if we can go up even one section above 6F, and this is in the settlement agreement, it would be beginning on page 8. The language there deals with a covenant not to sue. Now, we have to go back to April of 2000. Subparagraph E. Subparagraph E. Page 56 of the appendix, just for purposes of the record. Thank you, Justice. In April of 2012, Archer Bank had two troubled loans. The principal borrowers were Orland Oak Partnership and Homer Developers. Those loans were guaranteed by Barry Booth, his wife, and Tom Booth and Tom Booth's wife. Archer Bank entered into a settlement agreement with Barry and Jane Booth, which is the settlement agreement which has become an exhibit that we're talking about. What Archer Bank decided to do is very straightforward, and this is something banks do all the time. I'm a bank attorney. I've done this routinely. Other bank attorneys I've learned from, this is a technique that banks use when they're dealing with troubled assets. One of the first things that you can do as a bank attorney  of a citation examination. Disclose it. Disclose all of your assets. If you agree to pay us approximately the amount we would eventually get from you at the end of the judgment and also cooperate with our foreclosure to make life easier for the bank, we'll give you a settlement. That's all that the bank did here. The bank pursued Tom Booth and his wife, and also Barry Booth. Barry Booth was cooperative. If you were to read the settlement agreement word for word, all that's going on here is Barry and Joan Booth are agreeing to convey their interests in properties, properties where the title is held in trust and in partnerships. Therefore, if the bank is also to get reciprocal cooperation from Tom Booth and his wife to convey their interests in the trust and the partnerships, the bank would thus own all the properties, which would either make the foreclosure much easier or else make it unnecessary. Also, Barry Booth disclosed his assets, and he agreed to make a payment approximately equal to what the bank would get if it pursued him and went all the way through judgment and citation proceedings. So Barry Booth paid $775,000, conveyed his interests or his half of all the trust, leaving open the bank to pursue Tom. Now, of course, Tom Booth never cooperated. So, necessitating going all the way to judgment in the case. But I think what's important to decide this case is just looking at the plain language of the settlement agreement. I begin to go to paragraph 6E, which is on page 8. And if you continue in 6E on to page 9, this is discussing the covenant not to sue. And in the covenant not to sue language, the bank specifically provided that, notwithstanding anything to the contrary set forth herein, this covenant shall not apply to constitute a release of or operate to discharge or otherwise affect any of the indebtedness, obligations, or liabilities owing to the bank from Homer LLC, the primary borrower, or in partnership, another borrower, or the other guarantors. In other words, the bank is covenanting not to sue Barry Booth or his wife in the foreclosure proceeding based on the settlement agreement, but it was specifically going to go after everybody else. Now, counsel for Thomas Booth is correct. The bank did agree that this would turn into a release of those guarantees. Again, this is not remarkable whatsoever. A bank may release guarantors on a loan if it enters into a settlement agreement with those guarantors and sue everybody else, take them all to judgment, and pursue them as long as it would like until it's satisfied. In this case, this release, the 6F release, is plain, it's unambiguous, it is very straightforward. It's in the settlement agreement. It is also maybe easier to read it in our brief on page 4. This release, and this is Archer Bank releasing the Booths. I won't read all of it, but I think as you get to maybe the 1, 2, 3, 4, 5th line down, it says discharge the Booths, capital B. At this point, it's unambiguous. The bank, Archer Bank, is discharging the Booths that is Barry and Jane Booth, the Booths. They're defined. Archer Bank is discharging the Booths. The next important part of that paragraph is going down two lines where it says from any claim relating, from any claim relating. Again, at this point, completely unambiguous. Archer Bank is releasing Barry and Jane from any claim relating. Now, what follows after that is a laundry list of potential claims or matters that could arise to claims. Plain unambiguous. Archer Bank discharged Barry and Jane from any claim relating to Home RLSE. Archer Bank discharged the Booths from any claim relating to PICONE, the collateral properties. Archer Bank discharged Barry and Jane Booth from Trust 0957. What it doesn't say, and what counsel needs for it to say in order for counsel to succeed in this appeal, is that it discharges the Booths and all of these other things. Because counsel is arguing to this court that Archer Bank discharged the loan documents. It's one of that laundry list of items. It doesn't say that. It says that Archer Bank discharged the Booths from any claim relating to the loan documents. That's quite different. That's an important distinction. Respectfully, I would argue that's why counsel cannot succeed in this appeal. It does not release all of those items. It releases Barry and Jane from those items. In fact, it is impossible to read it the way counsel is requesting it be read because, for example, if counsel is correct and those items are all being released like he needs for the underlying principal obligation to be released, it would mean that the loan documents are released. It would also mean that Archer Bank is agreeing to release in F, you can look at one of those items, the enforcement action. In other words, if counsel is correct, then Archer Bank has agreed to release the enforcement action. It cannot. The enforcement action is a defined term. It has to do with what IDOT is doing with regard to one of the properties that we may have to get involved in if we take over 159th Street because IDOT was widening 159th. Archer Bank could not release that enforcement action. It wasn't even ours. What this is saying is that if we get involved in the 159th Street action, that Barry and Jane would cooperate, and we're releasing them from any claims that could arise because we're involved in that enforcement action. Again, it's plain. It's unambiguous. Archer Bank is not releasing 159th Street. We don't own 159th Street. We're releasing Tom and Joan from any claim that could arise from anything that we have to do with regard to 159th Street. Do you agree paragraph 2 has been complied with? I do. Okay. I do. That answers my question. Yes. But paragraph 1 is, I think, important. Counsel represented, and I don't think it's important for this appeal that maybe Tom Booth didn't even know about this agreement. He did. But it's also obvious that he did because the reason that Archer Bank is taking only one half interest in these trusts, for example, where they take Barry Booth's interest in the trust is because, as it was contemplated in 6F1, if we ever get Tom Booth to agree and settle this matter, then he'll convey his interest in the trust, we'll own the properties which are held in trust, and we'll have a full settlement. In which case, then Barry and Jane, your guarantees are released. The other just plain, unambiguous language that I think is all that's necessary to decide this appeal is found in the guarantees themselves. Again, this is unremarkable. This is straightforward. This is unambiguous. If you look at our brief on page 17, the language of the guarantees quoted there. And again, this is very standard, straightforward stuff. The guarantees in this instance, Thomas and Joan have executed guarantee agreements which contain standard bank protective language found as template  for drafting or enforcing. Here, and I'll just quote a section of it, the guarantors, which are Thomas and Joan, agree that all or any part of the obligations or the obligations of any additional obligor may be changed, altered, renewed, extended, continued, surrendered, compromised, waived, terminated, or released. In other words, Thomas and Joan specifically agreed, and again, which is unremarkable to me, but this is what the appeal is about. They specifically agreed that Archer Bank could release other guarantors, yet Thomas and Joan would remain obligated under their guarantees. This is the guarantee also, direct that the parties, the undersigned for the two guarantee documents, that they are undertaking them as joint in several, so they stand together, and that the language that you reference would be if there was an additional guarantee required, that there could be more than one set of guarantees for each of these loans, that they could come in and say the loan's in trouble, maybe an in-law or somebody's going to come in and give us another guarantee on that. The language of the guarantee does also say that the Booth couples are doing this as a joint in several undertaking, that it's the four of them rise and fall together. Respectfully, I might disagree that it provides that they would rise and fall together. I would argue that I think based on the language of the guarantee that it provides that if you go down a little bit in the guarantee, for example, it provides that the undersigned agrees that this guarantee shall remain in full force and effect and will not be discharged except by the complete performance of the obligation. My practice in representing banks is that a bank may, without permission from other guarantors, release one guarantor to a loan. I think another point about Consol's argument, he relies heavily on the Demos case, which is very different than this case. I think if, for example, in the settlement agreement, Archer Bank had a settlement agreement with Barry and Jane and also Homer Developers, who's the obligor under the note, and also Earl and Oak, who's another obligor under the note, and it agreed to release the guarantees and the principal obligation, he may have an argument. He may not, but he may at least have an argument that Demos applies to say that Thomas and Joan are released. But that's not the case here. Archer Bank never released the underlying obligation. In fact, we have summary judgment and obtained judgment on the note, and we're collecting under those notes. So there is no release of either of the primary obligors, nor of the notes themselves, and we have judgment under those notes. So, you know, at the end of all this, this is a case that has gone on for some time. Tom and Joan fought tooth and nail through this foreclosure, but essentially it comes back to just being a straightforward, ordinary, commercial foreclosure case. The bank, quite unremarkably, released two of its guarantors and released them from their obligations under the guarantee agreements, and Thomas and Joan Booth never reached a similar agreement until judgment has been entered against them. I think that the Honorable Judge Thanos got it right, and his judgment should be affirmed. Thank you. Any other questions? Thank you very much, Mr. Gentleman, for your response. May I proceed? Yes. The bank's lawyer just made an interesting admission, in a sense, that says that if the principal obligation was released, that the obligations under the guarantees would be released. That's the second argument that I've been raising here. Now, to understand that, in fact, the bank did release the principal obligations when it entered this release, is to look at, okay, the bank only entered one agreement with the Booths, Barry and Joan. That's the guarantee. Barry Booth didn't sign any other document, wasn't obligated under any other document to the bank. So the only claim that the bank could release is a claim on the guarantee. But does the guarantee say, and they all signed the same document? Yes, it's all one. And the guarantee said it was joint and several obligations. Yes, sir. Which means if I'm the person, and three of you out there signed joint and several obligations to me, guarantees means I can come to one of you, I can say I want it all from you, or I want a third from each of you, or I want a half from you and a half from you, and that's what joint and several is. True, but the problem is when you settle in joint and several liability cases with one person, that affects the other people. And here it's even a little different because... Well, but that's the problem you get into when you sign a joint and several obligation. Right, that's true, and that's why the law is said, and the law is trying to resolve these cases. If you settle with one, be careful, you might be settling with the rest. But here, the second argument is that the guarantee is not enforceable because the principal obligation has been released. The bank gave Barry Booth a release of the principal obligations because when you look at all this language that Mr. Darniak was referring to, it does more than just... The bank does more than just release the guarantees, it releases the boost from any claim relating in any matter whatsoever to this agreement, the guarantees, the loan documents. So what does that mean then? The bank can't give Barry Booth a release from Homer Developers related to the loan documents. It can only give Barry Booth a release of the claims that it possesses, the bank possesses, and the bank possesses a claim against Homer Developers and Orlando. That's what this language is trying to do here, is releasing that obligation. If that's true, then Mr. Darniak admits, agrees, that that releases the guarantees. So... Yeah, I think he said if that's true he may have a better argument. Right, he didn't want to say... He didn't say... In fairness. Right. But I read that to mean... Because he didn't say, well, here's the counter argument to that. I think the law is clear. You know, Mr. Darniak also mentioned something about, well, if you take the way I interpret this agreement, that the bank can't pursue enforcement actions. In other words, it can't foreclose. But that's just not true because the release doesn't go into effect until after there's a judgment in the enforcement action. So the bank can pursue its enforcement action against the collateral properties. In fact, it did. And then once it finished that, then the release goes into effect. So this release does not prohibit the bank in any way from obtaining the collateral properties. Do I understand you right that part of your argument is that had this release contained a paragraph or a sentence that said, we reserve our rights against your clients notwithstanding this on the guarantee, then you wouldn't be here? Well, yeah, then the first argument, release one, release all, would not apply. Yes. But that doesn't address the release of the principal obligation argument because that is a separate and independent argument that stands on its own. But yes, if it did have that reservation, then the release one, release all, Parmelee case and its progeny would not apply here. I agree with that. And that's where the bank made a mistake with respect to that argument. But it still released the principal obligations here because why else is all this language in here? All it had to do, the only thing that the bank, the only release the bank could give Barry Booth is a release from the guarantee. It's the only document he signed. Counsel has one minute. So I wanted to point out, you know, the effect of a release when there's joint several liability. If you look at the Illinois Law and Practice section that I cited, there's a case in there, Riley Acquisitions v. Drexler, 408, Illinois Appellate 3rd, 397. That's another case that deals exactly with this issue of the release of the principal obligation and saying that the question was raised about what the language was in the guarantee. Does that cover the situation? And did Thomas Booth agree that if the principal obligation was released, that he's not released? These cases deal exactly with this, especially this Riley case, because it says you're changing the obligation. You're changing it from a guarantee to a surety ship agreement. And you can't do that because, you know, Thomas Booth only agreed to be a guarantor. And a guarantor, being a guarantor means I'm only going to pay you if the principal's liable. And in this case, all this extra language and all these extra releases, the only way these extra releases can be construed is that the bank is releasing people that it can release. Thomas Booth wasn't part of those agreements, or Barry Booth wasn't part of those agreements, so the bank provided too much. Maybe it did provide too much. But we're stuck with the language here. And for those reasons, we would ask that the court reverse the trial court and enter judgment in favor of Thomas Booth, because we filed a motion for summary judgment on this issue too, which was not in the trial court. And I thank you for your time today and reading the briefs. I appreciate it. I hope when you step away from the podium you're still happy to be here. I'll wait until the decision comes out, I guess. Thank you, Alice. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement. A written decision will be issued to you as soon as possible. We will stand in a brief recess for a panel change.